

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00561-CR

VICTOR ANSON
BAYLOR

APPELLANT

V.

THE STATE OF TEXAS

STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In one point, Appellant Victor Anson Baylor appeals the denial of his motion for DNA testing, complaining that the trial court erred by failing to order testing of a black mask seized at the time of his arrest. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

In 1999, a jury convicted Baylor of aggravated assault with a deadly weapon, to-wit: a firearm, and the trial court assessed his punishment at sixty years' confinement. This court affirmed the conviction. *See Baylor v. State*, No. 02-99-00347-CR (Tex. App.—Fort Worth May 24, 2001, pet. ref'd) (not designated for publication).

In 2007, Baylor filed a motion to appoint counsel. The trial court appointed counsel for him, and in 2010, Baylor filed his request for DNA testing. The State filed a response, advising that a black mask—also referred to as a "stocking cap"[2]—was available for testing but arguing that DNA testing of the mask would not exonerate Baylor and would only "muddy the waters." The State also filed proposed findings of fact and conclusions of law. The trial court denied Baylor's request for DNA testing after adopting the State's proposed findings and conclusions, some of which are set out below. This appeal followed.

## III. DNA Testing

To be entitled to post-conviction DNA testing, a convicted person must meet the requirements of articles 64.01 and 64.03 of the code of criminal procedure; failure to satisfy any of the requirements of both articles defeats the motion. *See* Tex. Code Crim. Proc. Ann. arts. 64.01, 64.03 (West 2011); *Routier*

---

[2]Our opinion in Baylor's direct appeal mentions that the stocking cap had holes cut out of it, which would make it mask-like. *See Baylor*, No. 02-99-00347-CR, slip op. at 11.

*v. State*, 273 S.W.3d 241, 245–46 (Tex. Crim. App. 2008); *Rivera v. State*, 89 S.W.3d 55, 59 n.13, 61 (Tex. Crim. App. 2002); *Dinkins v. State*, 84 S.W.3d 639, 641–42 (Tex. Crim. App. 2002). As pertinent here, under article 64.03, the convicted person must show that the evidence still exists in a condition making testing possible, that identity was or is an issue, and that a reasonable probability exists that he would not have been convicted if exculpatory DNA test results had been obtained.[3] *See* Tex. Code Crim. Proc. Ann. art. 64.03(a); *Rivera*, 89 S.W.3d at 59 n.13. When, as here, the trial court denies a motion for post-conviction DNA testing without a hearing, we review the ruling de novo. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

In his sole point, Baylor complains that the trial court erred by failing to order DNA testing of the mask, arguing that "testing could go to demonstrating whether the appellant wore this mask during the commission of the offense." Baylor states that a negative answer would be exculpatory in light of the fact that the complainant did not identify his assailant. The State responds that the trial court properly denied Baylor's request for DNA testing because Baylor was unable to show by a preponderance of the evidence that he would not have been

---

[3]Further, under article 64.01, a convicted person seeking testing of biological evidence must demonstrate the evidence was not previously subjected to DNA testing because DNA testing was either not available or was not technologically capable of providing probative results. Tex. Code Crim. Proc. Ann. art. 64.01(b)(1); *Dinkins*, 84 S.W.3d at 641–42.

convicted if exculpatory results had been obtained through DNA testing of the mask. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A).

The following findings of fact have bearing on Baylor's sole point:

5. The Second Court of Appeals summarized the applicable facts as follows:

> On Friday, September 7, 1996, Robert "Denver Bob" Winrow arrived in Fort Worth for a weekend of gambling. On Saturday, Winrow and [Defendant] gambled together at several locations in Fort Worth, including the Club Fernandez. At approximately 6:00am on Sunday morning, Winrow left the club. As he sat in his car at a stoplight, another car pulled up on the passenger side. A man of [Defendant's] size wearing a black mask and carrying a large caliber gun got out of the car and began shooting into the windshield of Winrow's car. Winrow managed to drive off, but not before a bullet struck him in the buttocks.
>
> Travis Chris Gray, an acquaintance of [Defendant], testified that [Defendant] had tried to recruit his help in robbing a man from out of town whom he had been following and watching at various gambling establishments. Although Gray refused, [Defendant] later told him that he attempted to rob the man after he left the club, while he was stopped at a red light. According to Gray, [Defendant] stated that he got out of his car and "unloaded" his gun into the man's vehicle until he thought the man was dead.
>
> On October 13, 1996, [Defendant] was stopped for a traffic violation on Interstate 35 between Austin and San Antonio. The police officer searched the vehicle and found a semi-automatic pistol and a black stocking-cap in the purse of the female passenger, Linda Cooper, who described herself as an "intimate friend" of [Defendant]. Although Cooper initially told the police that the gun belonged to her, she later denied having ever seen the weapon before the officer pulled it from her purse. At trial, Cooper testified that she did not

4

put the gun or the stocking-cap in her purse, and that the only person who would have had access to her purse in the car was [Defendant]. Ballistics tests confirmed that the weapon recovered from the purse was the one that had been used in the assault of Winrow.

See Baylor v. State, No. 02-99-347-CR, Slip. Op. 2–3 (Tex. App.—Fort Worth May 24, 2001, pet. ref'd) (not designated for publication).

. . . .

7. The stocking-cap was seized from Defendant's girlfriend's purse. . . .

8. Defendant's girlfriend testified that only Defendant could have put the stocking-cap in her purse. . . .

9. The victim and his attacker were in separate cars. . . .

10. There is no reason the victim's DNA would be on the stocking-cap.

11. The stocking-cap was not seized until six days after the assault. . . .

12. There is no evidence, or allegation, that the stocking-cap was in the same condition when it was seized as it was at the time of the assault.

13. It is possible that the stocking-cap was washed in the six days from the time of the assault until its seizure.

14. The absence of Defendant's DNA on the stocking-cap would not prove that he did not commit the offense.

15. There is no evidence, or allegation, as to how many people handled the stocking-cap before or after its seizure.

16. The presence of other persons' DNA would not prove that Defendant did not commit the offense.

5

17. Defendant is unable to show, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained through DNA testing of the stocking-cap.

The trial court also made the following pertinent conclusions of law:

7. Defendant has failed to prove, by a preponderance of the evidence, that he would not have been convicted had exculpatory results been obtained through DNA testing of the stocking cap.

. . . .

9. Defendant has failed to show that "there is a 51% chance that" he would not have been convicted had exculpatory results been obtained through DNA testing.

10. Defendant is unable to prove by a preponderance of the evidence that he would not have been convicted had exculpatory results been obtained through additional DNA testing.

"A 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" *Ex parte Gutierrez*, 337 S.W.3d 883, 892 (Tex. Crim. App. 2011). Based on the evidence presented at Baylor's trial, we cannot say that testing of the mask would do any more than muddy the waters because, as recited above, the trial court found (based on the facts recited in this court's opinion on Baylor's direct appeal): (1) Baylor's girlfriend had the mask in her purse when it was seized six days later, and she testified that only Baylor could have put it and the gun there; (2) the victim and attacker were in separate cars so there was no reason for the victim's DNA to be on the mask; (3) one of Baylor's acquaintances testified at trial that Baylor tried to recruit his help in committing a robbery of a man from out of town and later told him that

6

he had tried to rob the man at a red light, emptying his gun into the man's vehicle until he thought the man was dead; and (4) when Baylor and his girlfriend were stopped for a traffic violation six days later, police found a gun and the mask in Baylor's girlfriend's purse, and ballistics tests confirmed that the gun was the one used in the assault six days before. *See id*.

On this evidence, Baylor cannot show that there is "greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results." *See id.* at 899 (stating that the burden under article 64.03(a)(2)(A) is met if the record shows that exculpatory DNA test results, excluding the defendant as the donor of the material, would establish by a preponderance of the evidence that he would not have been convicted); *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010) (stating that a movant does not satisfy his burden under article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing); *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App.) (stating that even if DNA testing showed the presence of another person's DNA, defendant failed to prove by a preponderance of the evidence that he would not have been convicted given the evidence presented at trial), *cert. denied*, 555 U.S. 833 (2008). We overrule Baylor's sole point.

## IV.  Conclusion

Having overruled Baylor's sole point, we affirm the trial court's judgment.


PER CURIAM


PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 8, 2011